ORLEANA C. SCHAUMBURG *et als.*, HEIRS OF THOMAS WRIGHT, Respondents, *v.* SUSAN P. HEPBURN *et als.*, HEIRS OF E. T. CHRISTY, Appellants.

*Conveyances — Lost Deed — Equity — Cloud on Title.*—Where a conveyance of land executed and delivered but not recorded has been lost, a court of equity will protect the rights of the grantee by enjoining any sale by the heirs or representatives of the grantor, and by divesting them of any claim and establishing the title of the grantee and his heirs.

### Appeal from St. Louis Land Court.

*Lackland, Cline & Jamison,* for appellants.

*Glover & Shepley,* and *B. A. Hill,* for respondents.

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding in the nature of a bill in equity to restrain Howard F. Christy, administrator of the estate of Edmund T. Christy, deceased, from selling a tract of land situated in North St. Louis, containing about five acres, and also praying to have the title to the same divested out of the defendants and vested in the complainants. The complain-

9—VOL. XXXIX.

ants claim the premises as heirs and legal representatives of Thomas Wright, deceased, and the defendants resist the suit and claim to hold as heirs and legal representatives of Edmund T. Christy, who, they alleged, died seized of the same. There is no deed no record showing any conveyance from Christy to Wright, but it is contended that Wright purchased the land from Christy in the winter or spring of 1833 and received a conveyance therefor, but that such conveyance is lost or destroyed. It is shown in evidence that immediately after the alleged conveyance Wright took possession of the land, enclosed the same, occupied and cultivated it up to the time of his death, and that the occupation and possession has been continued in his heirs ever since.

The court found that a deed was made and executed by Christy and delivered to Wright in 1833, and rendered a decree for complainants.

The doctrine of a presumed conveyance cannot be here indulged as the possession was not sufficiently ancient to invoke that principle of law. The alleged sale and conveyances were in 1833; Christy died in 1839, and his administrator, in pursuance of an order of the Probate Court of St. Louis county, advertised the property for sale in 1841 for the payment of debts owing by deceased, at which time this suit was instituted.

The complainants read in evidence the deposition of William Wright, who stated that he was residing in North St. Louis in the year 1833, and that he was acquainted with Maj. Thomas Wright and Edmund T. Christy, and that he was then superintendent of all the business matters of Thos. Wright, and as such was aware of all his business transactions; that he knew that Thomas Wright did, in the spring of 1833, purchase of Edmund T. Christy the five-acre lot here in controversy, and that Christy executed a deed therefor to Wright; that he, as agent of Wright and acting under his direction, purchased rails for the purpose of enclosing the tract of land, and which was enclosed soon after the purchase by Wright, and was cultivated by him as a part of his farm up to the autumn of the year 1836.

The deposition of John F. Darby was next given in evidence, and he stated in substance that he knew the parties, Thomas Wright and Edmund T. Christy; that Christy was indebted to one McDonald, and that for the purpose of securing that indebtedness he executed a deed of trust to him (Darby) for the benefit of McDonald; that, when the notes on which the trust deed was founded became due, McDonald applied to him to sell the property (the five acres being included in the deed) to realize the money; that he wrote out an advertisement, and had it put in type to be published, in order to give notice of the sale, but the publication was stopped and the land not offered for sale, Christy prevailing on Wright to pay the money for him; that he called on Wright, who gave him a check for the amount; the understanding was with all parties, when the settlement was made, that the land mentioned in the deed of trust, and more particularly the five-acre tract, was to be deeded to Wright; this was in the spring of the year 1833. On cross-examination, he stated that he did not recollect to have ever seen Wright and Christy together talking about the business, but McDonald and Christy came to his office and said that Wright would settle the debt, and he did settle it; that McDonald and Christy came to his office, and he understood from them that it was the understanding that Wright should get the property and settle the debts, and that he afterwards went to Wright, who said such was the understanding, and he did settle the debt; that his idea was that the agreement referred to the five-acre tract, that being the principal thing, though how he got that idea he could not explain; that either before or after Christy's death, though he thinks it was in 1839, Gen. Ruland, clerk of the Circuit Court, came to him and wanted him to make a deed of the land to Wright's heirs, and he objected because he did not consider that he had any authority to execute any other deed than a release to Christy.

The complainants then, after proving the signature of Edmund T. Christy, offered in evidence an order addressed by

Christy to Darby, requesting and directing him to make a deed of the land included in the deed of trust to Wright's heirs, and place it in the hands of Judge Wash, administrator of the estate of Wright. This order was dated 20th November, 1834. Darby stated in his deposition that the order was never delivered to him to his knowledge, and he did not recollect to have ever seen it till it was shown to him by Mr. Polk on the day his deposition was taken. This order or letter was objected to by defendants because it was incompetent and irrelevant, but the court overruled the objection and admitted it in evidence.

The complainants next gave in evidence the deed of trust from Christy to Darby, as trustee of McDonald, dated November 5, 1832; and also a deed of assignment, dated October 31, 1839, by Christy to Julius D. Johnston just previous to his death, by which he purported to convey all his lands, tenements and hereditaments, goods and chattels, choses in action, of every kind and description, to said Johnston for the benefit of his creditors. Annexed to this deed was a schedule enumerating all the lands which he was possessed and seized of, together with his personal property, but the five acres now in dispute was not included.

The defendants then gave in evidence a deed from Ed. T. Christy to Thomas Wright, dated April 10, 1833, by which Christy conveyed to Wright fifty acres of land, adjoining the five-acre tract, for the consideration of two thousand dollars; also the deed of release executed by John F. Darby to Ed. T. Christy, dated October 8, 1836, and the deed of William Christy to Edmund T. Christy, conveying certain premises in which this land is included, dated December 27, 1831. And this was all the evidence in the case.

As to the admissibility of the order or letter of Christy to Darby authorizing him to make and execute a deed to Wright's heirs, it may be stated that it was immaterial to the case; but it is not perceived how or in what manner it could have worked any injury to the defendants. Darby testifies that he refused to make a deed, when applied to for that

purpose, because he doubted his authority to do so; and that he only executed one deed, and that was a deed of release conveying the land back to Christy. The letter directed and authorized Darby to convey the land to Wright's heirs after Wright's death, and there is no evidence that any deed was ever made to the heirs; but the whole tenor of the case is that the conveyance was executed and delivered to Wright in his lifetime, else it was never made and delivered at all. An inference might be drawn that the original deed to Wright was lost or destroyed, and this was intended to supply its place; but we deem this unreliable and inconclusive.

There is nothing to warrant or to justify the presumption attempted to be raised by the counsel for the defendants that the money paid by Wright to Darby for the use of McDonald was in part consideration for the fifty-acre tract. All the evidence goes to show that the purchase of the two tracts were separate and distinct transactions. Darby says that McDonald and Christy both told him that Wright had agreed to take the property (by which he understood the five-acre tract) and pay the money, in order that the debt might be paid and the deed of trust discharged. Wright told him the same thing, and paid the money according to the understanding. Superadded to this, William Wright testifies that he was the agent of his brother Thomas, who was an officer in the United States army, and was conversant with all his business matters and superintended them; that Christy made, executed and delivered the deed to Thomas in the spring of 1833, and that he immediately enclosed the land, and thereafter occupied and cultivated it. This evidence is uncontradicted, and we see nothing to rebut or destroy its force. We therefore conclude that the Land Court committed no error in finding that a deed was executed and delivered to Wright from Christy in 1833, and in making the injunction perpetual.

The decree and judgment must be affirmed. The other judges concur.